UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tyler Michael Stenzel,<br><br>    Plaintiff,<br><br>vs.<br><br>Bemidji State University; Debra Peterson,<br>in her individual and official capacity as<br>Title IX investigator of BSU; Troy Gilbertson,<br>In his individual and official capacity as Dean<br>Of BSU,<br><br>    Defendants. | Case File No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED<br>UNDER FED. R. CIV. P. 38(b)** |

For his complaint, Plaintiff Tyler Michael Stenzel, states and alleges as follows:

1. This is an action for money damages arising out of the violation of Tyler Michael Stenzel's Fourteenth and Eighth Amendment rights by Defendant, who, in violation of the United States constitution and federal law, took state action against Mr. Stenzel based upon sexually discrimination and violation of contract. By their deliberate and purposeful sexual discrimination against Mr. Stenzel, Defendant violated well-settled federal civil rights all while acting under color of state law.

## JURISDICTION AND VENUE

2. Stenzel brings this action to vindicate his well-settled civil rights pursuant to 42 U.S.C. §§ 1981, 1983 and 1988, the Fourteenth, and Eighth Amendments to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(3). These

       statutory and constitutional provisions confer original jurisdiction of this Court over the matter. Venue is proper under 28 U.S.C. §§ 1391(b)(1), (2) and (e)(1)(A), (B).

3. Stenzel invokes this Court's original jurisdiction under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* and 28 U.S.C. § 1331.

4. Stenzel also invokes this Court's jurisdiction over related state common law and statutory claims under the principles of ancillary and/or pendent jurisdiction pursuant to 28 U.S.C. § 1367.

5. Pursuant to 28 U.S.C. § 1391, venue for this action properly lies in this judicial district because a substantial part of the events and omissions giving rise to the claims set forth below occurred in this district.

## PARTIES

6. Tyler Michael Stenzel is a 19-year old male, currently residing at 60 6th Street Southeast, Medford, Minnesota 55049.

7. Defendant Bemidji State University ("Defendant BSU") is a public educational institution established in Minnesota, with its principal place of business located at 1500 Birchmont Drive Northeast, Bemidji, Beltrami County, Minnesota 56601.

8. Defendant Debra Peterson is a professor at Defendant-BSU, and is the Title IX investigator for the Defendant. Defendant-Peterson's office is located at

Bemidji State University, Deputy Hall 315, Bemidji, Beltrami County, State of Minnesota, 56601-2699.

9. Defendant Troy Gilbertson is the interim Dean of Defendant-BSU. Defendant-Gilbertson's office is located at Bemidji State University, Sattgast Hall 347, Bemidji, Beltrami County, State of Minnesota, 56601-2699.

## FACTS

10. Stenzel incorporates all previous paragraphs as if fully set forth herein.

11. Stenzel was an active student at BSU, beginning his attendance from on or about August 19, 2016 through the November 15, 2016, at which time he was suspended from Defendant BSU for one year after he was accused of sexual misconduct by Brittany Demers, a fellow student.

12. Stenzel applied to, and was accepted by, Defendant BSU to attend school for the year 2016-2017.

13. After careful consideration, Stenzel decided to attend Defendant BSU and forego opportunities for education elsewhere.

14. In consideration for his decision to attend Defendant BSU's and the payment of tuition, Stenzel received assurances from Defendant BSU that it would deal with him in good faith and in a non-arbitrary manner and non-discriminatory manner and in accordance with all applicable laws, and that he would receive all appropriate due process protections if he were accused of violating his obligations as a student and member of Defendant BSU's community.

15. Stenzel relied on these assurances when accepting Defendant BSU's offer of admission.

16. While attending classes at Defendant BSU's, Stenzel prepared for and attended classes, and volunteered with the Department of Natural Resources.

17. On the evening of August 23, Stenzel attended an on-campus event with several people, including Brittany Demers, Cierra Duschene, and Nicholas Meixner.

18. Brittany Demers is a student at Defendant BSU who attended the on-campus event with Stenzel.

19. Demers was a classmate of Stenzel's at Defendant-BSU, and the two were friendly and spent time with one another outside of class.

20. Cierra Duschene was the roommate to Demers, and went to the same elementary and high school as Stenzel.

21. Nicholas Meixner was the roommate to Stenzel, and went to the same elementary and high school as Stenzel.

22. Stenzel and the other three went to the on-campus event together at approximately 9:00 p.m., and left the event together at approximately 10:30 p.m.

23. Stenzel and the others returned to Stenzel and Meixner's dorm room around 10:30 p.m.

24. Shortly after returning to Stenzel and Meixner's dorm room, Stenzel and Demers left his dorm room together and together went to Demers' dorm room.

25. Cierra Duschene and Nick Meixner remained in Stenzel's dormitory room.

26. In Demers' dormitory room, Stenzel and Demers watched a movie.

27. While watching the movie, Demers removed her clothing and set down on the futon next to Stenzel.

28. Demers initiated sexual contact with Stenzel without obtaining consent.

29. Demers touched Stenzel on his penis over his pants, before she opened his pants and handled his penis with her hand.

30. Demers took Stenzel's hand and placed it on her vagina.

31. Stenzel stopped the sexual contact with Demers.

32. After Stenzel stopped the sexual contact, Demers dressed and entered her bed.

33. Stenzel attempted to speak with Demers about the incident, but she refused to speak with him.

34. Stenzel fell asleep on the mattress below the lofted bed where Demers slept.

35. The next day, Demers told Stenzel that "what happened last night, didn't happen."

36. Later, Demers stated that "no means no" and implied accusations that Stenzel had forced sexual conduct.

37. Stenzel and Demers engaged in a series of text messages regarding the incident.

38. Demers erased part of the text messages between herself and Stenzel, and later provided the tampered text messages to Defendant BSU.

39. Demers claimed to Cierra Duschene that Stenzel "raped" her.

40. When Duschene inquired how Stenzel "raped" her, Demers texted a response "I'm pretty sure he went inside of me when I was sleeping" and "like 98% sure."

41. Demers swore in an affidavit to Beltrami District Court in support of her application for a harassment restraining order, that Stenzel entered her room using the keys from Duschene.

42. Duschene informed law enforcement that she had not given her keys to Stenzel and that she had the keys with her the entire time.

43. Demers also claimed that she was bruised from the attack by Stenzel.

44. Demers obtained a physical examination August 25, 2019 at approximately 9:00 p.m.

45. The medical report indicated that no bruising was observed on Stenzel's person.

46. On August 25, 2016, Stenzel spoke with a Defendant-BSU employee regarding the nonconsensual sexual contact the previous night.

47. Defendant-BSU did no follow-up and began no investigation regarding the nonconsensual sexual contact against Stenzel by Demers.

48. On August 27, 2016, Demers made a report to law enforcement.

49. At approximately the same time, Demers accused Stenzel of sexual assault to Defendant BSU.

50. Because of Demers's accusation against Stenzel, Defendant BSU began an investigation into sexual assault.

51. No charges were filed in the criminal investigation.

52. Demers sought and obtained an *ex parte* restraining order.

53. Stenzel requested a contested hearing, which was held on October 31, 2016 and November 4, 2016.

54. Stenzel and Demers agreed to mutual orders of no-contact.

55. Stenzel obtained additional information related to his case the day of the contested hearing, and offered this information on/about October 31, 2016 to Defendant-BSU as part of its investigation.

56. Defendant-BSU declined to accept additional information related to its investigation.

57. Demers provided inconsistent statements regarding the incident to several different parties.

58. Demers provided additional statements that were inconsistent with the statement of other witnesses:

    a. Demers stated that Stenzel obtained nonconsensual access to her room by using her roommate's (Duschene) key, which Duschene denied.

    b. Demers stated that Stenzel caused bruising to her body, of which medical personnel made no observation.

    c. Demers testified that she has never had intercourse and that Stenzel sexually penetrated, which medical personnel did not corroborate.

    d. 'Demers stated she knocked on the dorm room of the resident advisor, which the resident advisor did not corroborate.

    e. Demers stated she knocked on the dorm room where Nick Meixner and Cierra Duschene were located, which neither corroborated.

    f. Demers stated she was yelling and screaming and that her neighbor "Mike" heard her, which Mike denied making any statement to police.

    g. Demers stated Cierra Duschene observed Stenzel naked in their dorm room, which Duschene did not corroborate.

59. Demers provided text messages to Defendant which were tampered and changed from their original messages:

    a. As a result of the change, the text messages conveyed a sense that Stenzel was apologizing for his actions;

    b. The original text messages convey that Demers initiated sexual contact and that after Stenzel stopped the nonconsensual sexual contact by Demers he was sorry she was upset for being rebuffed.

60. When, during the investigating of Demer's complaint Stenzel told Defendant that Demers had touched him sexually without his consent, Defendant was unresponsive.

61. On or about September 22, 2016, Stenzel sought to review the documents related to the investigator for Defendant BSU's. Defendant BSU refused to allow Stenzel to review or obtain a copy of the allegations against him citing "privacy" concerns.

62. Stenzel was unable to review any of the allegations against him and was unable to adequately prepare witnesses or amass information to respond to the allegations, which prejudiced him.

63. When Stenzel obtained a copy of the entire police investigatory file, Stenzel offered it to Defendant Debra Peterson, who declined to accept any additional information in consideration of the claims by Demers.

64. Defendant Gilbertson, the interim Dean of Defendant-BSU, reviewed the incomplete information provided by Defendant Peterson, in determining what actions to take against Stenzel.

65. Defendant Gilbertson decided to suspend Stenzel from school for a period of one-year.

## CAUSES OF ACTION
## COUNT I

### Violation of Title IX

174. Stenzel reincorporates all previous paragraphs as if fully set forth herein,

175. Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") provides in relevant part that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or shall be subjected to

discrimination under any education program or activity receiving Federal financial assistance.

176. Upon information and belief, Defendants receive federal funding through various means including, without limitation, student loans provided to Defendant-Bemidji State University's students directly by the federal government and through other funds furnished by the federal government.

177. Defendants decision that it was more likely than not that Stenzel committed nonconsensual sexual penetration with Demers, its reliance upon a text message from a chain of tampered messages, and its decision to disregard all testimony and corroborating evidence of Stenzel's information, is so irrational that it can only be explained by discriminatory gender bias against males in cases involving allegations of sexual assault in violation of Title IX.

178. When Defendant became aware of Stenzel's claims that Demers had undressed herself, touched Stenzel and encouraged Stenzel to touch her without first obtaining his consent, Defendant initiated no sexual misconduct investigation of Demers's actions, even though Demers's own behavior constituted a violation of Defendants' sexual misconduct policy.

179. Defendants' failure to initiate a sexual misconduct investigation of Demers when they learned of Stenzel's claims that Demers engaged in non-consensual sexual activities with Stenzel can only be explained by discriminatory gender bias against males in cases involving allegations of sexual assault in violation of Title IX.

180. Regulations implementing Title IX require that schools "adopt and publish grievance procedures providing for the prompt and equitable resolution of student… complaints alleging any action which would be prohibited by" Title IX or its regulations.

181. To assist schools with implementing those regulations, the Office of Civil Rights ("OCR") of the United States Department of Education has identified a number of factors to be used in determining whether a school's procedures satisfy the "prompt and equitable" requirements of the regulations.

182. According to OCR's guidance, procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant, "but must also "accord[] due process to both parties involved…" Pursuant to the OCR's Revised Sexual Harassment Guidance, "due process" must include, among other things, "[a]dequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence."

183. Stenzel's due process rights under Title IX were violated when Defendants decided that he violated their Sexual Misconduct Policy without considering whether Demers could understand the "fact," "nature," or "extent" of the sexual situation she engaged in with Stenzel on the evening of August 23, 2016.

184. Stenzel's due process rights under Title IX were violated when Defendant decided that Stenzel violated their Sexual Misconduct Policy because he did not seek consent for sexual activities performed upon him by his accuser.

185. Defendant violated Stenzel's right to due process under Title IX when it refused to provided him Demers's statements.

186. Defendant violated Stenzel's right to due process under Title IX when it denied him his interest in his education and his good reputation by requiring that only a single employee of Defendant University find it slightly more likely than not that Stenzel engaged in sexual misconduct.

187. Defendant violated Stenzel's right to due process when it refused to allow Stenzel to see and respond to the accusations against him.

188. Defendant violated Stenzel's right to due process when it refused to allow Stenzel to cross-examine Demers.

189. Defendants violated Stenzel's right to due process when it refused to identify and allow Stenzel to examine the alleged witnesses Demers identified.

190. Defendants violated Stenzel's right to due process under Title IX when they considered and then misapplied their standard for sexual misconduct by coercion without notice to Stenzel.

191. Defendants violated Stenzel's right to due process when it disregarded all testimony and medical evidence consistent with Stenzel's information and chose instead to rely solely upon the uncorroborated allegations of Demers.

192. Defendant violated Stenzel's right to due process when it refused to consider all information available to it under the totality of the circumstances review.

193. Schools also have an obligation under Title IX to ensure that all employees involved in sexual harassment proceedings (including proceedings involving

"alleged sexual assaults") have "adequate training as to what conduct constitutes sexual harassment."

194. This unlawful discrimination by Defendant in violation of Title IX proximately caused Stenzel to sustain substantial injury, damage, and loss, including, but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of educational opportunities; and loss of future career prospects.

## COUNT II

### Breach of Covenant of Good Faith and Fair Dealing

226. Stenzel reincorporates all previous paragraphs as if fully set forth herein.

227. At all times relevant hereto, a contractual relationship existed between Stenzel and Defendants. Defendants' Student Handbooks, Sexual Misconduct Policy, and other published guidance and policies comprise a contract. Defendants were required to act in accordance with their Sexual Misconduct Policy and honor those principles in its investigations of complaints, in the process of adjudicating complaints, and in resolving appeals brought to challenge disciplinary decisions.

228. The promises set forth in the Student Handbook and the Sexual Misconduct Policy were supported by valid consideration.

229. Stenzel fully complied with all his contractual obligations to Defendants, including payment of tuition and compliance with enrollment procedures.

230. Based on the facts and circumstances, Defendants breached its contractual obligations and implicit contractual obligations to Stenzel by, among other things:

   i  Discriminating against Stenzel because of his gender;

   ii  Failing to provide adequate policies and procedures for investigation and adjudication of complaints of alleged sexual misconduct;

   iii  Failing to adequately investigate the allegations of sexual misconduct by intentionally refusing to consider investigative facts related to the criminal investigation, which was available to the Defendant;

   iv  Violating Defendants' policy against gender/sex-based discrimination by establishing a de facto presumption, on the basis of gender stereotypes, that Stenzel committed to sexual assault;

   v  Violating Defendants' policy against gender/sex-based discrimination by failing to investigate Stenzel's own claims that Demers engaged in sexual acts without seeking consent beforehand;

   vi  Conducting a cursory, superficial, biased, and fundamentally unfair investigation, hearing and appeal process;

   vii  Rendering an arbitrary and capricious determination decision against the Stenzel by: ignoring corroborating evidence of Stenzel's information; ignoring impeaching evidence of Demers accusation; refusing to accept additional information for the totality-of-the-

circumstances analysis when offered such evidence; and by deciding in a manner without any evidence to support it; and

viii   Failing to impose a proportionate and reasonable sanction.

231. As a direct, proximate, and foreseeable consequence of those breaches, Stenzel sustained significant damages including, without limitation, loss of educational opportunities, economic injuries, and other direct and consequential damages.

232. The contract between Defendants and Stenzel imposed upon Defendants a duty of good faith and fair dealing, including a duty to conduct a diligent, unbiased and meaningful investigation, adjudication, and appellate review per Defendants' Sexual Misconduct Policy and other policies.

233. Defendants breached and violated the covenant of good faith and fair dealing implied in its agreement with Stenzel by failing to conduct a diligent, unbiased, and meaningful investigation, adjudication, and appellate review.

234. Defendant also breached its implied covenant of good faith and fair dealing by engaging in the conduct described above.

235. As a direct, proximate, and foreseeable consequence of those breaches, Stenzel sustained significant damages, including, without limitation, loss of educational opportunities, loss of employment opportunities, economic injuries, and other direct and consequential damages.

## RELIEF REQUESTED

WHEREFORE, Stenzel, demands that judgment be entered in his favor and against Defendants for the following relief:

1. Order Defendants to correct Stenzel's academic and disciplinary record to remove any findings issued by Defendants with respect to the charges leveled against him by Defendants and/or Demers;

2. Order Defendants to verify this correction by providing Stenzel with a notarized letter confirming that any findings with respect to these charges have been expunged from Stenzel's record;

3. Order Defendants to immediately allow Stenzel to reenroll at Defendant Bemidji State University to complete his degree requirements;

4. Issue a permanent injunction that directs Defendants to comply with Title IX, including its due process requirements;

5. Award Stenzel compensatory damages in an amount to be determined at trial, but not less than $75,000 for mental anguish, severe emotional distress, serious mental injury, injury to reputation, past and future economic loss, deprivations of due process, loss of educational opportunities, loss of future career prospects, and other injuries proximately caused by the wrongful conduct of Defendants;

6. Award Stenzel his attorney's fees, disbursements, and costs pursuant to the provisions of 42 U.S.C. § 1988(b) (relating to Title IX); or pursuant to any

other statute or common law doctrine providing for the award of attorney's fees, disbursements, and/or costs;

7. Award prejudgment interest; and

8. Grant such other and further relied as the Court may deem just and proper.

                          Respectfully Submitted,
                          **WELCH LAW FIRM, LLC**

February 23, 2017        /s/Melvin R. Welch
Date                         Melvin R. Welch (387750)
                          First National Bank Building
                          332 Minnesota Street, Suite W1610
                          Saint Paul, MN 55101
                          Phone: 612-741-3272
                          Fax: 651-223-5179
                          Mel@MelvinWelchLaw.com

                          ATTORNEY FOR PLAINTIFF