# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| TYLER MICHAEL STENZEL,<br>      Plaintiff,<br><br>v.<br><br>DEBRA PETERSON, *in her individual and official capacity*, TROY GILBERTSON, *in his individual and official capacity*, BEMIDJI STATE UNIVERSITY,<br><br>      Defendants. | Civil No. 17-580 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

  Melvin R. Welch, **WELCH LAW FIRM**, 332 Minnesota Street, Suite W-1610, Saint Paul, MN 55101, for plaintiff.

  Kathryn M. Woodruff, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 1800 Bremer Building, 445 Minnesota Street, Saint Paul, MN 55101, for defendants.

  This case arises from alleged sexual violence that occurred on Defendant Bemidji State University's ("BSU") campus in August 2014. Plaintiff Tyler Stenzel filed this case against BSU and school officials Debra Peterson and Troy Gilbertson (collectively "individual Defendants") regarding the school's disciplinary actions against Stenzel. Stenzel alleges two claims: violation of Title IX (Count I); and Breach of the Covenant of Good Faith and Fair Dealing (Count II). Defendants filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Court will grant Defendants' motion to dismiss because as to the Title IX claim, there is insufficient evidence to demonstrate that BSU's actions were motivated by gender. As to the claim alleging a Breach of the

Covenant of Good Faith and Fair Dealing, the Court finds that BSU is protected by immunity from state-law claims under the Eleventh Amendment.

## BACKGROUND

### I. BSU SEXUAL VIOLENCE POLICY

BSU follows the Minnesota Colleges and Universities ("MnSCU") Board of Trustees' Sexual Violence Policy when responding to allegations of "sexual violence." BSU's Policy is consistent with MnSCU's Policy. (Aff. of Troy Gilberston ("Gilbertson Aff.") Exs. 1-2, Mar. 15, 2017, Docket No. 9.) Both the BSU Policy and MnSCU Policy (collectively, "the Policy") define "sexual violence" as "a continuum of conduct that includes sexual assault, non-forcible sex acts, dating and relationship violence, stalking, as well as aiding acts of sexual violence." (*Id.*, Ex. 1 at 1 & Ex. 2 at 1.) The Policy defines "sexual assault" to include "an actual, attempted, or threatened sexual act with another person without that person's consent." (*Id.*, Ex. 1 at 1 & Ex. 2 at 2.) The definition includes "[i]ntentional and unwelcome touching, or coercing, forcing, or attempting to coerce or force another to touch a person's intimate parts (defined as primary genital area, groin, inner thigh, buttocks, or breast)." (*Id.*, Ex. 1 at 2 & Ex. 2 at 2.)

The Policy dictates BSU's response to sexual violence. (*Id.*, Ex. 3 at 1.) The Policy protects the rights and privacy of "the complainant and respondent," when an allegation of sexual violence is reported. Under the Policy, students are "strongly

encouraged" to report sexual abuse and BSU employees are "urged to encourage and assist complainants." (*Id*. at 1-2.)

Once a complainant reports sexual violence to BSU, an officer designated by BSU's President conducts an investigation ("designated officer"). (*Id*., Ex. 4 at 2, 4.) The designated officer is charged with ensuring that the complaint is made in writing, and providing the respondent with information about the "existence and general nature of the complaint." (*Id*. at 5.) The designated officer must conduct an impartial investigation and manage all data in accordance with the applicable privacy laws. (*Id*.) Following the investigation, if the dispute remains unresolved, the "decision process" is followed. (*Id*. at 7.) In the decision process, the designated officer prepares an investigatory report and forwards it to the decisionmaker (a high-level administrator designated by BSU's President), who may ask for further investigation before making a decision. (*Id*.) The decisionmaker meets with the "complainant, respondent, or other involved individuals" and takes into account "the totality of the circumstances" to determine an appropriate corrective action. (*Id*.)

If the corrective action includes a suspension of ten or more days, the student may contest the corrective action under Minn. Stat. § 14. (*Id*. at 8.) A Minnesota Administrative Law Judge ("ALJ") hears the appeal, makes findings of facts and law, and forwards those findings to BSU's President to make a final decision. (*Id*.)

II. **THE INCIDENT**

On August 23, 2014, Stenzel, a first-year BSU student, attended an on-campus event with a group of friends, including complainant Brittany Demers. (Compl. ¶ 17, Feb. 24, 2017, Docket No. 1.) The two "were friendly and spent time with one another outside of class." (*Id*. ¶ 19.) The group returned to Stenzel's dorm room around 10:30 p.m., and, shortly thereafter, Stenzel and Demers allegedly went to Demers's dorm room together. (*Id.* ¶¶ 23-24.) While in the dorm room, Stenzel alleges that Demers undressed and initiated sexual contact, which Stenzel claims he stopped before the two went to bed. (*Id*. ¶¶ 28-29, 31-32.) In contrast, Demers previously described that Stenzel accessed Demers's dorm room without Demers's knowledge and had sexually penetrated Demers without consent. (*Id.* ¶¶ 58(a), 58(c).) That night, Stenzel slept in Demers's dorm room. (*Id.* ¶ 34.)

The following day, Demers implied that she was uncomfortable with what happened the previous evening. (*See id*. ¶ 35.) Demers's discomfort caused her to send several text messages about the incident, to both her roommate and Stenzel. (*Id*. ¶¶ 35-37.) In one text message, Demers's roommate asked how Stenzel raped Demers, and Demers responded "'I'm pretty sure he went inside of me when I was sleeping' . . . 'like 98% sure.'" (*Id*. ¶ 40.)

Stenzel alleges that, on August 25, 2016, he spoke with a BSU employee and discussed "nonconsensual sexual contact the previous night." (*Id.* ¶¶ 46, 178.) Stenzel asserts that BSU did "no follow-up and began no investigation" into Demers. (*Id.* ¶¶ 47, 178.) On the same day, Demers underwent a physical examination. (*Id.* ¶ 44.)

On or around August 27, 2016, Demers reported to law enforcement that Stenzel raped her. (*Id*. ¶¶ 48-49.) Around the same time, Demers requested and obtained a harassment restraining order from a Minnesota district court and swore in an affidavit that Stenzel gained access into her dorm room using keys that Demers's roommate provided him. (*Id*. ¶¶ 41, 52.) Law enforcement investigated the incident, but charges were never filed. (*Id*. ¶ 51.)

In tandem with the criminal investigation, BSU conducted an internal investigation under the Policy after Demers made a report of sexual violence against Stenzel. In compliance with the Policy, Peterson conducted an investigation, including interviews of Stenzel, Demers, and other witnesses, and the collection of law-enforcement documentation. (Gilbertson Aff. ¶ 6.) Peterson completed an investigative report and sent it to Gilbertson along with supporting evidence. (*Id.*) On or about September 22, 2016, Stenzel asked to review the allegations against him, but BSU denied him a copy over "'privacy' concerns." (Compl. ¶ 61.)[1] Stenzel obtained a copy of the law-enforcement record and other evidence prior to a contested hearing. (*Id*. ¶¶ 55, 63.) Stenzel offered Peterson the information, but she did not accept it. (*Id*. ¶¶ 56, 63.) A contested hearing occurred on October 31 and November 4, 2016. (*Id*. ¶ 53.) On November 15, 2016, Gilbertson determined that it was more likely than not that Stenzel

---

[1] On January 30, 2017, "[u]pon execution of a protective order necessary to protect private educational data," BSU provided Stenzel a complete copy of BSU's investigative report. (Aff. of Kathryn Woodruff ¶ 2, May 15, 2017, Docket No. 8.)

"violated BSU's sexual violence policy" and imposed a one-year suspension on Stenzel. (Gilbertson Aff. ¶ 7 & Ex. 3 at 5; Compl. ¶ 11.)

Stenzel disagreed with Gilbertson's determination and timely appealed, having his case heard by an ALJ as permitted by the Policy. (Sealed Letter, Attach. 2 at 16, July 25, 2017, Docket No. 24.) Stenzel alleged to this Court that Peterson and Gilbertson made a number of errors during the investigation, including reliance on Demers's inconsistent statements to support Gilbertson's finding. (*See* Compl. ¶¶ 58-59.)

At oral argument, the Court inquired into the status of the ALJ appeal. The parties admitted – and BSU filed sealed documents reflecting – that the ALJ held an evidentiary hearing on April 21, 2017, the ALJ recommended BSU's President rescind Stenzel's one-year suspension, and, on July 14, 2017, BSU's President formally rescinded Stenzel's suspension. (Sealed Letter, Attach. 1 at 4, Attach. 2 at 7.)

### III. PROCEDURAL HISTORY

Stenzel filed the Complaint on February 24, 2017, alleging two causes of action: (1) violation of Title IX; and (2) Breach of the Covenant of Good Faith and Fair Dealing. Defendants responded with a motion to dismiss all claims, asserting that Stenzel failed to state a claim upon which relief can be granted.

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a claim for

"relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility,'" and therefore must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II.     TITLE IX (COUNT I)[2]

Title IX states "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial

---

[2] In Count I, Stenzel alleges individual Defendants violated Title IX in their individual capacities. But claims under Title IX against individuals are improper because Title IX explicitly applies to recipients of federal funding. *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 611 (8th Cir. 1999) (citing *Rowinsky v. Bryan Indep. Sch. Dist.,* 80 F.3d 1006, 1012 (5th Cir. 1996)) ("[T]he fact that Title IX was enacted pursuant to Congress's spending power is evidence that it prohibits discriminatory acts only by grant recipients."). For that reason the Court will grant Defendant's motion to dismiss the Title IX claim against individual Defendants in their individual capacities.

assistance." 20 U.S.C. § 1681(a). "As a general rule, Title IX is not an invitation for courts to second-guess disciplinary decisions of colleges or universities." *Doe v. Univ. of St. Thomas*, __ F. Supp. 3d __, 2017 WL 811905, at *4 (D. Minn. Mar. 1, 2017) (citing *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648-49 (1999)). "And Title IX should be construed to give '[s]chool administrators . . . the flexibility they require' to initiate a reasonable disciplinary response." *Id.* (quoting *Davis*, 526 U.S. at 648-49).

Title IX claims arising from disciplinary hearings can arguably be "analyzed under the 'erroneous outcome' standard, 'selective enforcement' standard, 'deliberate indifference' standard, and 'archaic assumptions' standard." *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009). Here, Stenzel does not articulate the standard under which he alleges a plausible Title IX claim. The Court finds, however, that Stenzel's allegations can fairly be read to allege a Title IX claim under the selective enforcement standard.[3]

---

[3] Prior to the BSU's President's decision, the Court could have construed the Complaint as asserting a Title IX claim based on erroneous outcome. But with Stenzel's admission that BSU's disciplinary proceeding ended in a finding that Stenzel did not violate the Policy, (*see* Sealed Letter, Attach. 1 at 4), the facts no longer support a Title IX claim based on erroneous outcome. *See Doe v. Ohio State Univ.*, __ F. Supp. 3d __, No. 16-171, 2017 WL 951464, at *14 (S.D. Ohio Mar. 10, 2017) ("An erroneous outcome claim exists when an 'innocent' person was wrongly found to have committed an offense because of his or her gender." (citing *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 777-78 (S.D. Ohio 2015)).

The Court also could have construed the Complaint as alleging a Title IX claim based on deliberate indifference. "But it is an open question whether the Title IX deliberate indifference standard applies to claims related to alleged gender discrimination in a university's disciplinary proceedings." *Univ. of St. Thomas*, 2017 WL 811905, at *4 n.2 (collecting cases). Because Stenzel did not specifically allege a deliberate indifference claim, the Court will not raise the

To allege a selective enforcement claim, Stenzel must plausibly allege circumstances suggesting gender bias motivated BSU's disciplinary proceeding. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 715-16 (2d Cir. 1994) (holding that, under the selective enforcement standard, "Title IX bars the imposition of university discipline [only] where gender is a motivating factor in the decision to discipline"). Stenzel must also show "that a female was in circumstances sufficiently similar to [plaintiff's] and was treated more favorably by the University." *Doe v. Case W. Reserve Univ.*, No. 14-2044, 2015 WL 5522001, at *6 (N.D. Ohio Sept. 16, 2015) (alteration in original) (quoting *Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003)). Stated differently, "a plaintiff demonstrates selective enforcement through the identification of a comparator of the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges." *Id.*

Recently, in *Doe v. Amhurst College*, the District of Massachusetts found sufficient allegations to survive a motion to dismiss where Doe alleged that the college:

> took proactive steps to encourage [the female complainant] to file a formal complaint against Doe when it learned he may have . . . subjected her to nonconsensual sexual activity. But, when the College learned [the female complainant] may have initiated sexual activity with Doe while he was . . . incapable of consenting, the College did not encourage him to file a complaint, consider the information, or otherwise investigate.

__ F. Supp. 3d __, No. 15-30097, 2017 WL 776410, at *18 (D. Mass. Feb. 28, 2017).

---

issue here. *See id.* (electing not to decide whether deliberate indifference claims in this circumstance are appropriate).

Similarly, Stenzel alleges that he spoke with a BSU employee on August 25, 2016, regarding "nonconsensual sexual contact the previous night." (Compl. ¶¶ 46, 178.) Stenzel asserts that BSU "did no follow-up and began no investigation" into Demers. (*Id.* ¶¶ 47, 178.) Then, around August 27, 2016, "Demers accused Stenzel of sexual assault to . . . BSU." (*Id.* ¶¶ 48-49.) And, because of the accusation, "BSU began an investigation into sexual assault." (*Id.* ¶ 50.) Stenzel states that BSU's "failure to initiate a sexual misconduct investigation of Demers when they learned of Stenzel's claims that Demers engaged in non-consensual sexual activities with Stenzel can only be explained by discriminatory gender bias against males in cases involving allegations of sexual assault in violation of Title IX." (*Id.* ¶ 179.)

But even with these allegations, Stenzel is required to allege specific facts showing "gender [was the] motivating factor in the decision to discipline." *Yusuf*, 35 F.3d at 715; *see also Doe v. Univ. of Colo., Boulder*, __ F. Supp. 3d __, 16-1789, 2017 WL 2311209, at *7 (D. Colo. May 26, 2017) (requiring plaintiff to "show that gender bias was the source of the deprivation" for a selective enforcement claim (quoting *Johnson v. W. State Colo. Univ.*, 71 F. Supp. 3d 1217, 1224 (D. Colo. 2014))). Stenzel points to a number of allegations in the Complaint to support his assertion that he alleged sufficient, specific facts regarding gender bias to survive a motion to dismiss. Stenzel's allegations can be summed up into four categories: allegations that BSU (1) showed Demers preferential treatment (Compl. ¶ 191); (2) improperly refused to consider

Stenzel's evidence (*id.* ¶ 63); (3) completed an "unfair" process (*id.* ¶¶ 183-90, 230); and (4) failed to initiate a sexual-misconduct investigation against Demers (*id.* ¶ 179).[4]

Stenzel's allegations are insufficient to support a plausible claim for relief. First, contrary to Stenzel's broadly worded complaint, mere allegations that a disciplinary process was unfair or failed to take into account certain information do not create an inference of gender bias sufficient for Title IX. *Yusef*, 35 F.3d at 715 ("[A]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss."); *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154 (D. Mass. 2017) ("[I]t is not the business of lawyers and judges to tell universities what statements they may consider and what statements they must reject." (quoting *Schaer v. Brandeis Univ.*, 735 N.E.2d 373, 380 (Mass. 2000)); *Univ. of the S.*, 687 F. Supp. 2d at 755 ("[T]he law does not allow this Court to retry the University's disciplinary proceeding." (quoting *Gomes v. Univ. of Me. Sys.*, 365 F. Supp. 2d 6, 14 (D. Me. 2005)).

Second, numerous courts have held that even if a university "treated [a] female student more favorably than the Plaintiff, during the disciplinary process, 'the mere fact that Plaintiff is male and [the alleged victim] is female does not suggest that the disparate treatment was because of Plaintiff's sex.'" *Salau v. Denton*, 139 F. Supp. 3d 989, 999

---

[4] Beyond these limited allegations, Stenzel makes no other arguments to show he was discriminated against because of his sex. In fact, all of the cases Stenzel cites regarding an inference of discrimination involve Title VII. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000). "Title VII, however, is a vastly different statute . . . . Title IX is a broadly written general provision on discrimination . . . . By contrast, Title VII spells out in greater detail the conduct that constitutes prohibited discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 177 (2005).

(W.D. Mo. 2015) (second alteration in original) (quoting *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 371 (S.D.N.Y. 2015)); *see also Doe v. Regents of the Univ. of Cal.*, No. 15-2478, 2016 WL 5515711, at *4 (C.D. Cal. July 25, 2016); *Case W. Reserve Univ.*, 2015 WL 5522001, at *5-6; *Doe v. Univ. of Mass.-Amherst*, No. 14-30143, 2015 WL 4306521, at *8 (D. Mass. July 14, 2015). And "demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015). Thus, Stenzel's allegations that BSU showed Demers preferential treatment are insufficient to plead a plausible claim that BSU's actions were motivated by Stenzel's gender.

Finally, with regard to Stenzel's allegation that BSU failed to investigate sexual misconduct against Demers, Stenzel admits in the Complaint that he did not formally report sexual violence to initiate an investigation. (*See* Compl. ¶ 46; *see also* Gilbertson Aff. ¶ 9 & Ex. 3 at 1-2.) The sum of Stenzel's allegation is that he "**spoke** with a . . . BSU employee regarding the nonconsensual sexual contact." (*Id.* ¶ 46 (emphasis added).) And the Policy did not require BSU employees to report allegations made by the students. (*See* Gilbertson Aff., Ex. 3 at 2 ("[E]mployees are **urged** to encourage and assist complainants." (emphasis added)).) Further, Stenzel makes no allegation that he was not encouraged to file a report or was dissuaded from filing a report. And the Complaint is silent on the circumstances surrounding Demers's formal report. Thus, there are not specific facts to indicate Stenzel was treated differently during the process because of his gender.

Stenzel's allegations of gender bias are also more perfunctory than other Title IX claims dismissed by this Court for failure to state a claim. In *University of St. Thomas*, the plaintiff failed to state a claim because his allegations were insufficient to show gender bias. 2017 WL 811905, at *6. There, the plaintiff made much more specific allegations, including: "the Federal government pushe[s] colleges and universities to punish male students accused of sexual assault" and "UST [had] only applied the Policy to male students accused by female students" of sexual misconduct. *Id.* at *5. Here, there are no such allegations. And, unlike the process afforded the plaintiff in *University of St. Thomas*, BSU's disciplinary process included an appeal in front of an ALJ, which resulted in a finding that Stenzel did not violate the Policy. (Sealed Letter, Attach. 1 at 4; *id.*, Attach. 2 at 7.)

Because Stenzel's allegations are insufficient to show BSU was motivated by gender, the Court will grant BSU's motion to dismiss Count I.

### III. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT II)

Defendants also move to dismiss Stenzel's Breach of the Covenant of Good Faith and Fair Dealing claim.[5]

BSU, like other MnSCU institutions have in the past, asserts that it is entitled to immunity under the Eleventh Amendment from state-law claims. *See Lewis v. St. Cloud State Univ.*, No. 04-4379, 2005 WL 3134064, at *10 (D. Minn. Nov. 23, 2005). The

---

[5] The Court notes that Stenzel did not respond substantively to the motion to dismiss the breach of good faith and fair dealing claim. *See Zimmerschied v. JP Morgan Chase Bank, N.A.*, 49 F. Supp. 3d 583, 590-91 (D. Minn. 2014).

Eleventh Amendment "bars federal court jurisdiction over state[-]law claims against unconsenting states or state officials when the state is the real, substantial party in interest, regardless of the remedy sought." *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000). "While there is no Eighth Circuit precedent squarely holding that schools in the MnSCU System are entitled to Eleventh Amendment immunity, the authority that does exist is highly suggestive of this conclusion." *Lewis*, 2005 WL 3134064, at *11; *see also Cooper*, 226 F.3d at 968-69 (assuming St. Cloud State University would be entitled to Eleventh Amendment protection); *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) (holding that Hibbing Community College, a Minnesota state college or university, had not waived its Eleventh Amendment immunity). The Eighth Circuit has recognized that "[t]he majority of cases addressing the question of eleventh amendment immunity for public colleges and universities . . . have held that these institutions are arms of their respective state governments and thus immune from suit." *Treleven v. Univ. of Minn.*, 73 F.3d 816, 819 (8th Cir. 1996) (quoting *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985)). Further, when the money to pay an award will be derived from the state treasury, courts often accord the state treasury factor "dispositive weight." *Lewis*, 2005 WL 3134064, at *11. Therefore, the Court finds Stenzel's state-law claim against BSU is barred by the Eleventh Amendment and the Court will grant BSU's motion to dismiss Count II.

With regard to the claim against individual Defendants, "Minnesota does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing without an underlying breach of contract claim." *I-Sys., Inc. v. Softwares, Inc.,*

No 02-1951, 2004 WL 742082, at *12 (D. Minn. Mar. 29, 2004).  Stenzel does not allege that a contract existed between Stenzel and individual Defendants.  To the extent he alleges the existence of a contract, it is with BSU – not individual Defendants.  (*See, e.g.*, Compl. ¶ 227.)  Therefore, the Court finds Stenzel failed to allege the breach of the covenant of good faith and fair dealing and will grant individual Defendants' motion to dismiss Count II.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED that** Defendants Bemidji State University, Debra Peterson, and Troy Gilbertson's Motion to Dismiss [Docket No. 5] is **GRANTED** and the Complaint [Docket No. 1] is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 13, 2017                          _____s/John R. Tunheim_____  
at Minneapolis, Minnesota.                               JOHN R. TUNHEIM  
                                                                           Chief Judge  
                                                            United States District Court